UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PEACH.COM, LLC,
a Delaware Limited Liability Company, and
LEVINSON MANAGEMENT GROUP LLC,
a Florida Limited Liability Company,

    Plaintiffs,

v.

PEACHLY, LLC,
a Nevada Limited Liability Company, and
KERIM ERAVCI, an Individual,

    Defendants,

_____/

Case No. _____

**JURY TRIAL REQUESTED**

## COMPLAINT FOR TRADEMARK INFRINGEMENT, CYBERSQUATTING AND UNFAIR COMPETITION

Plaintiffs PEACH.COM, LLC ("PCL") and LEVINSON MANAGEMENT GROUP LLC ("LMG") (both PCL and LMG collectively "Plaintiffs") hereby sue Defendants PEACHLY, LLC ("Peachly") and KERIM ERAVCI ("Eravci") (both Peachly and Eravci collectively "Defendants") for willful trademark infringement, cybersquatting and unfair competition.

In support, Plaintiffs allege as follow:

### THE PARTIES

1. PCL is a Limited Liability Company formed and organized on September 24, 2020 under the laws of the State of Florida. PCL is located at 2 South Biscayne Blvd, Suite 2600, Miami, Florida 33131. PCL is managed by LMG and its affiliate entities (collectively, the "Peach Enterprise"). The Peach Enterprise creates, designs, develops, and launches multiple online content subscription services platforms allowing content creators to earn money from third-party users who subscribe to their content. PCL maintains, operates, advertises, and markets an online

content subscription platform, created and designed by the Peach Enterprise, located at the domain name Peach.com (the "**PEACH** Domain Name" or "**PEACH** Website").

2.   LMG is a Limited Liability Company formed and organized on or about July 29, 2015 under the laws of the State of Florida.  LMG maintains its primary business address at 6560 West Rogers Circle, Suite B15, Boca Raton, Florida 33487.

3.   The **PEACH** Website is a fast-growing crowdfunding platform for content creators that allows performers to create and sell photographic, video and streaming content to third-party users (*i.e.,* fans). Third-party users subscribe to individual content creators, which enables interaction with the content creators including in real time and via chat.  PCL's subscription free platform available at the **PEACH** Website actively advertises, markets, and promotes its online subscription services under the inherently distinctive **PEACH** trademark (the "**PEACH** Mark").

4.   Peachly is a Limited Liability Company formed and organized on or about September 11, 2020 under the laws of the State of Nevada.  Peachly is located at 4730 South Fort Apache Road, Suite 300, Las Vegas, Nevada 89147. According to Facebook (at www.facebook.com/peachlyappp ("Peachly Facebook Page")), Peachly is an online content subscription service that is "limitation free," providing content creators the ability to monetize their posted content under the implicated trade name **PEACHLY** (the "**PEACHLY** Trade Name").  Upon information and belief, Peachly owns the domain name Peachly.com (the "Peachly Website") as well as its related recruitment page JoinPeachly.com (the "Join Peachly Website"), which is employed to recruit content creators to set up accounts on the Peachly Website.

5.   Eravci is an individual working and/or residing in Scottsdale, Arizona.  Upon information and belief, Eravci is the sole manager and an owner of Peachly.  Upon further information and belief, Eravci is the moving force behind Peachly's selection, adoption and/or use

of the **PEACHLY** Trade Name (and related **PEACHLY** Logo identified below) for online content subscription services, as well as Peachly's intentional and improper selection of the domain names used for the Peachly Website and the Join Peachly Website.

## JURISDICTION AND VENUE

6. This Court has Federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338(a) and (b), by virtue of 15 U.S.C. §1051 *et seq.,* in that the case arises out of §43(a) of the Lanham Act for trademark infringement and cybersquatting, as well as supplemental jurisdiction under 28 U.S.C. §§1367(a) and 1338 (a),(b) for Plaintiffs' Florida common law unfair competition cause of action.

7. Venue is proper, *inter alia*, under 28 U.S.C. §1391(b)(2) because, on information and belief, a substantial part of the events or omissions giving rise to Plaintiffs' three causes of action plead herein occurred in this judicial district. Such events include Defendants' advertising, marketing and promotion of their Peachly Website and Join Peachly Website within this judicial district. More specifically, Defendants' Join Peachly Website operates to attract potential content creators to form accounts and post photographic, video and streaming content on the Peachly Website, including content creators located within the Southern District of Florida. Likewise, Defendants have used, are using, and intend to continue to use the implicated **PEACHLY** Trade Name for the purpose of attracting potential third-party users located within this judicial district to their competing Peachly Website. All of the foregoing actions target individuals within this judicial district away from the **PEACH** Website, resulting in irreparable harm, including but not limited to consumer confusion in light of Plaintiffs' valuable and exclusive rights in the **PEACH** Mark, as well as related damages felt by Plaintiffs within the Southern District of Florida.

## **GENERAL ALLEGATIONS**

### **Plaintiffs' Online Content Subscription Services Offered Under the PEACH Mark**

8. The Peach Enterprise develops a variety of online web offerings, including some which allow various content creators the ability to create photographic, video and streaming content for purposes of posting online. The Peach Enterprise's platforms provide content creators the freedom to set their own monthly subscription rates – for purposes of allowing third-party users (*i.e.,* fans) to select and subscribe to these content creators. Monthly subscriptions allow the third-party users a secure and private chat feature and related electronic mailbox to communicate with content creators. In turn, as part of the monthly subscription rates, content creators are able – through the Peach Enterprise's platform functionality – to chat, direct message, and electronically mail user specific content in a secure environment to individual third-party users. The platform also allows for real time interaction.

9. The Peach Enterprise has expended considerable resources in the creation, architecture, design, development, and programming of its online content subscription services – and views its secure and user-friendly online platforms as industry leading.

10. In early 2020, the Peach Enterprise decided to launch a new online content service, focused on providing content creators with a secure portal to allow for the posting and availability of their photographic and video content. The focus of this service would be to afford 100% reliability for purposes of securing online payments to content creators – as well as assuring third-party users that their account details remain encrypted and credit/debit card payment particulars secured. Another attribute of the site would be that the platform would not require any monthly subscription fees for the platform and would monetize based upon third-party users who want to monthly subscribe to specific content creators.

11. The Peach Enterprise set out to identify a unique and distinctive name for this planned online content subscription service. Ultimately, by mid-to-late August 2020, it identified the **PEACH** Mark, based on the suggestiveness of the underlying name in relation to the planned services, for purposes of branding and identifying its planned website offering. The Peach Enterprise conducted research prior to the adoption of the **PEACH** Mark for the anticipated online content subscription platform.

12. Approximately a month after identifying the **PEACH** Mark for purposes of branding and notifying the United States Patent & Trademark Office ("USPTO") of its intent to use the **PEACH** Mark (as described in more detail below), the Peach Enterprise formed and organized PCL on September 24, 2020 for purpose of operating and running its planned online content subscription service.

13. After selecting the **PEACH** Mark for its planned new offering (and forming PCL), the Peach Enterprise negotiated and executed a purchase and sale agreement on September 4, 2020 for acquiring the valuable rights to the **PEACH** Domain Name, which purchase and sale transaction closed on October 1, 2020. The Peach Enterprise paid a significant premium for those valuable domain name rights.

14. From October 2020 to mid-January 2021, Plaintiffs expended an additional significant funds and resources in the design, development, architecture, and programming of the **PEACH** Website. In short, Plaintiffs expended a considerable amount in the development of the **PEACH** Website before it was even offered to content creators and/or third-party users.

15. The **PEACH** Website does not require any monthly subscription fees and monetizes based upon third-party users who monthly subscribe to specific content creators.

16. On or about January 16, 2021, Plaintiffs launched a fully functional public beta

version of the **PEACH** Website. By this time, PCL was able to successfully negotiate and obtain a significant number of content creators.

17. In fact, between its launch and February 7, 2021, PCL had obtained some 8,000 users of the **PEACH** Website. Moreover, since the launch of the **PEACH** Website, PCL typically has between 1,200 to 1,800 views of its platform each day. As such, PCL has not only obtained a considerable number of content creators who maintain an active presence on the **PEACH** Website, but also has obtained a growing number of third-party users (fans) who frequent the site.

### The Peach Enterprise's Three Trademark Applications for its PEACH Mark before the USPTO

18. Proximate the acquisition of the **PEACH** Domain Name, the Peach Enterprise undertook efforts to obtain exclusivity of the **PEACH** Mark in relation to online and mobile application software used for viewing and sharing videos, photographs, and related blog posts for online content subscription services.

19. On August 26, 2020, LMG filed, through their outside counsel, three separate Section 1(b) intent-to-use trademark applications before the USPTO in International Classes 9, 41, and 35 for the standard character mark **PEACH**.

20. These three filings for the Peach Enterprise's **PEACH** Mark include U.S. Trademark App. Ser. No. 90/138,468 in International Class 9 ("the '468 Application") for "Downloadable software in the nature of a mobile application for viewing and sharing videos, photographs, and blog posts in the field of entertainment; Downloadable videos and photographs in the field of entertainment via the internet and wireless devices."

21. In addition, LMG owns U.S. Trademark App. Ser. 90/138,509 in International Class 41 ("the '509 Application") for "Providing a website featuring non-downloadable publications in the nature of videos, photographs, and blog posts in the field of entertainment."

On January 18, 2021, LMG amended the '509 Application to allege use of its **PEACH** Mark – denoting use in Interstate Commerce as of January 16, 2021. The USPTO issued a Notice of Acceptance regarding the Amendment to Allege Use on January 26, 2021.

22. Lastly, LMG owns U.S. Trademark App. 90/138,529 in International Class 35 ("The '529 Application") for "Advertising services, namely, promotion of content creators seeking crowdfunding." On January 18, 2021, LMG amended the '529 Application to allege use of its **PEACH** Mark – denoting use in Interstate Commerce as of January 16, 2021. The USPTO issued a Notice of Acceptance regarding the Amendment to Allege Use on January 26, 2021.

23. Since the launch of the **PEACH** Website, Plaintiffs have spent considerable time, money and efforts – in addition to the significant sums they expended to build and launch the site – to advertise, promote, and market their online content subscription services under the inherently distinctive **PEACH** Mark.

24. Moreover, since that time, Plaintiffs have maintained a considerable level of content creators that have joined and are active on the **PEACH** Website, as well as related customers who subscribe to these associated content creators – all of which have created considerable goodwill, notoriety and repute of the **PEACH** Website (and therefore also the **PEACH** Mark) as a well-recognized online content subscription service.

25. This result has created considerable rights in the **PEACH** Mark, including under the '468 Application, the '509 Application, and the '529 Application.

**Defendants' PEACHLY Trade Name and Related Online Content Subscription Services**

26. Two weeks after the Peach Enterprise filed its three trademark applications for the standard character mark **PEACH**, Eravci formed and organized Peachly on September 11, 2020. By this time, the Peach Enterprise had not only secured the **PEACH** Domain Name, but was

undertaking considerable efforts in the programming, design, development and creation of the **PEACH** Website.

27. Two months after formation of Peachly, Defendants, through their outside counsel, prepared and filed U.S. Trademark Application Ser. No. 90/318,631 ("the '631 Application") on November 13, 2020 for the standard character mark **PEACHLY** in International Class 35 for "Advertising and marketing services provided by means of indirect methods of marketing communications, namely, social media, search engine marketing, inquiry marketing, internet marketing, mobile marketing, blogging and other forms of passive, sharable or viral communications channels; On-line customer-based social media brand marketing services; Providing a website for users with specific informed recommendations of specific consumer products and services validated by the users' inputted preferences and social network; Providing business information in the field of social media; Providing marketing consulting in the field of social media."

28. On that same day, Defendants, through their outside counsel, also prepared and filed U.S. Trademark Application Ser. No. 90/318,667 ("the '667 Application") for the following stylized logo (the "**PEACHLY** Logo") in International Class 35:



29. Both the '631 Application and the '667 Application were filed as Section 1(b) intent-to-use trademark filings.

**Placement of Defendants On-Notice of Plaintiffs' Valuable Rights in the PEACH Mark**

30. On December 9, 2020, the Peach Enterprise, through its outside counsel, served on Defendants a cease-and-desist letter regarding Defendants' planned use of **PEACHLY** Trade

Name and **PEACHLY** Logo, including related use via the Peachly Facebook Page, Peachly Website, and Join Peachly Website (the "December 9 Letter"). A true and correct copy of the December 9 Letter is attached as **Exhibit A** hereto. As noted in **Exhibit A**, the Peach Enterprise placed Defendants on notice that their "promotion of Peachly's competing platform using the **PEACHLY** Marks, will lead to substantial consumer confusion as to the source, affiliation, and/or sponsorship of Peachly" in comparison to Plaintiffs' valuable rights in the **PEACH** Mark.

31.  On December 17, 2020, the Peach Enterprise received a response to the December 9 Letter (the "December 17 Response"). In the December 17 Response, Peachly notified Plaintiffs that they would not "withdraw its trademark applications, discontinue using the **PEACHLY** trademark [or transfer] its domain names" to the Peachly Website and/or the Join Peachly Website.

32.  Peachly launched its Facebook Page on December 29, 2020 with the following initial post:



33. According to the Peachly Facebook Page, Defendants posted on January 30, 2021 that they anticipate a full launch of their implicated Peachly Website by mid-February 2021:



34. Defendants are using their **PEACHLY** Trade Name and **PEACHLY** Logo via social media (including Facebook and Instagram at https://www.instagram.com/peachlyapp/ (the "Peachly Instagram Page")) to market and advertise both their Peachly Website and Join Peachly Website to the same customers as Plaintiffs' **PEACH** Website.

35. Moreover, the **PEACHLY** Trade Name and **PEACHLY** Logo as used by Defendants are substantially similar in meaning and appearance compared to the **PEACH** Mark.

36. Lastly, the Peachly Website offers similar (if not identical) online subscription services as compared to the **PEACH** Website – which, again, are used by the same types of consumers (including the same types of content creators, and the same third-party users (*i.e.,* fans)).

37. The foregoing constitutes clear acts of unfair competition, which risks considerable consumer confusion in that customers (either content creators and/or third-party users/fans) going on the Peachly Website and/or Join Peachly Website will believe these online subscription services are affiliated, sponsored, endorsed or related to Plaintiffs and their **PEACH** Website.

## COUNT I

## FEDERAL UNFAIR COMPETITION – PASSING OFF
## 15 U.S.C. §1125(a)
(against all Defendants)

38. Plaintiffs re-allege and incorporate by reference paragraphs one (1) through thirty-seven (37) as if fully set forth herein.

39. Peachly (through the acts, consent and approval of Eravci) has knowingly and intentionally used both the **PEACHLY** Trade Name and the **PEACHLY Logo**, both via social media (including but not limited to the Peachly Facebook Page and the Peachly Instagram Page), to advertise in interstate commerce, within multiple marketing and business channels, online subscription services available at the Peachly Website and Join Peachly Website to both content creators and third-party users (*i.e.,* fans).

40. Through these various efforts and use of the Peachly Trade Name and the Peachly Logo for purposes of advertising, marketing and promoting the Peachly Website and Join Peachly Website, Defendants have endeavored to suggest to relevant consumers of online subscription services that Defendants' Peachly Website and Join Peachly Website are affiliated, sponsored and/or related to Plaintiffs (as well as their distinctive **PEACH** Mark).

41. Defendants' use of the **PEACHLY** Trade Name and the **PEACHLY** Logo, including but not limited to the Peachly Facebook Page and the Peachly Instagram Page, are marketed and used in a manner that suggests that there is some relationship between Plaintiffs and Defendants' Peachly Website and Join Peachly Website.

42. As such, Defendants' unauthorized use of the **PEACHLY** Trade Name and the **PEACHLY** Logo are likely to cause, has caused, and will continue to cause, confusion among

customers as to the origin, sponsorship or approval of Defendants' online subscription services (which compete directly with Plaintiffs' online subscription services at the **PEACH** Website).

43. Defendants are therefore in violation of 15 U.S.C. § 1125(a) in that Defendants have used and continue to use, in relation to commercial activities, a false designation or origin, or a false or misleading description which is likely to cause confusion, to cause mistake, and to deceive, as to the affiliation, connection, or association with Plaintiffs and their **PEACH** Mark.

44. Plaintiffs have suffered, and will continue to suffer, irreparable harm resulting from the acts of unfair competition by Defendants.

45. Plaintiffs will suffer additional irreparable harm unless Defendants are enjoined by the Court from continuing those acts, which constitute unfair competition.

46. Plaintiffs have no adequate remedy at law.

47. Defendants' acts of unfair competition are willful, and this is an exceptional case within the meaning of 15 U.S.C. §1117.

## COUNT II

## FEDERAL CYBERSQUATTING
## 15 U.S.C. §1125(d)
(against all Defendants)

48. Plaintiffs re-allege and incorporate by reference paragraphs one (1) through thirty-seven (37) as if fully set forth herein.

49. This is an action by Plaintiffs against Defendants for cybersquatting, based upon Defendants' improper act of registering and/or trafficking two internet domain names which include a confusingly similar mark compared to Plaintiffs' **PEACH** Mark (and **PEACH** Website).

50. As provided by the foregoing, Plaintiffs are the exclusive owner of the **PEACH** Mark for online subscription services. Plaintiffs enjoy exclusive rights in that mark, protectable under 15 U.S.C. § 1125(a) as well as other related common law rights.

51. Defendants registered the domain names for the Peachly Website and Join Peachly Website after Plaintiffs' October 1, 2020 purchase of the **PEACH** Website domain.

52. Upon information and belief, Defendants' registration and later launch of the Peachly Website and Join Peachly Website, or in the alternative continuing such activities after receipt of the December 9 Letter, were done to divert customers (both content creators as well as third-party users) from Plaintiffs' **PEACH** Website for commercial gain and/or to create a likelihood of confusion as to the source, sponsorship, affiliation or enforcement of the Peach.com site. As such, Defendants' actions constitute bad faith under 15 U.S.C. §1125(d)(1)(B)(i)(V).

53. Accordingly, Defendants' bad faith actions are in direct violation of 15 U.S.C. §1125(d) and accordingly require forfeiture of the domain names associated with the Peachly Website and the Join Peachly Website.

54. Likewise, Defendants actions have caused and will continue to cause irreparable harm, lost profits, and loss of sales.

55. Plaintiffs will continue to suffer additional irreparable harm unless Defendants are enjoined by the Court from continuing those acts, which constitute clear cybersquatting.

56. Plaintiffs have no adequate remedy at law.

57. Upon information and belief, Defendants' acts of unfair competition are willful, and this is an exceptional case within the meaning of 15 U.S.C. §1117.

## **COUNT III**

## **FLORIDA COMMON LAW UNFAIR COMPETITION**
(against all Defendants)

58. Plaintiffs re-allege and incorporate by reference paragraphs one (1) through thirty-seven (37) as if fully set forth herein.

59. This is an action of unfair competition under the laws of the State of Florida.

60. Defendants' aforesaid activities constitute unfair competition and an infringement of Plaintiffs' common law rights in the **PEACH** Mark based upon Defendants' efforts to "pass off" their online marketing and advertising as being associated, affiliated with, or endorsed by Plaintiffs.

61. Plaintiffs have been damaged by Defendants knowing and willful acts of unfair competition, including but not limited to its adoption and continued use of the name **PEACHLY**, which has created a likelihood of confusion.

62. This common law unfair competition has caused and, unless enjoined, will continue to cause Plaintiffs irreparable harm.

63. Plaintiffs have no adequate remedy at law.

## **PRAYER FOR COSTS AND ATTORNEY FEES**

Plaintiffs request award of reasonable costs and attorney fees pursuant to the Lanham Act.

## **REQUEST FOR JURY TRIAL**

Plaintiffs request jury trial of all matters so triable as a matter of right.

**PRAYER FOR RELIEF**

WHEREFORE, for all of the foregoing reasons, Plaintiffs PEACH.COM, LLC and LEVINSON MANAGEMENT GROUP LLC request this Honorable Court grant relief in the following manner:

a. Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminary and permanently enjoined from infringing on Plaintiffs' **PEACH** Mark or colorable imitation thereof.

b. Defendants transfer all domain name rights to Plaintiffs regarding the Peachly Website and Join Peachly Website (as well as any related domain names that include the terms "Peach," "Peachly" or colorable imitation thereof).

c. Plaintiffs be awarded all other monetary remedies available under the Lanham Act and common law, including but not limited to, penalties and fines, compensatory damages, treble damages, disgorgement of profits, interest, costs and attorney's fees as legally permitted by each count respectively.

d. Pursuant to 15 U.S.C. § 1117(d), with regard to Defendants' improper act of registering and/or trafficking two implicated internet domain names Peachly.com and JoinPeachly.com, Plaintiffs reserve their right to elect to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

e. Any and all other relief that this Honorable Court deems just.

Respectfully submitted this 16th day of February, 2021.

> ***/s/ Robert H. Thornburg***
> Robert Thornburg
> Florida Bar No. 630829
> E-Mail: rthornburg@allendyer.com
> Stephanie Vazquez
> Florida Bar No. 1011124
> E-Mail: svazquez@allendyer.com
> Melissa Dangond
> Florida Bar No. 1025285
> E-Mail: mdangond@allendyer.com
> ALLEN, DYER, DOPPELT
> & GILCHRIST, P.A.
> 1221 Brickell Ave., Suite 2400
> Miami, Florida 33131
> Telephone:    (305) 374-8303
> Facsimile:    (305) 374-8306
>
> *Counsel for Plaintiffs Peach.com LLC and Levinson Management Group LLC*