**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.1:21-cv-20636-DPG

PEACH.COM, LLC,
a Delaware Limited Liability Company, and
LEVINSON MANAGEMENT GROUP LLC,
a Florida Limited Liability Company

           Plaintiffs,

vs.

PEACHLY, LLC,
a Nevada Limited Liability Company, and
KERIM ERAVCI, an Individual.

        Defendants.

_____/

## PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY AND STAY OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (D.E. 10) PENDING JURISDICTIONAL DISCOVERY

Plaintiffs Peach.com, LLC ("PLC") and Levinson Management Group, LLC ("LMG") (both collectively "Plaintiffs") hereby file this Motion for Leave to Conduct Jurisdictional Discovery on Defendants Peachly, LLC  ("Peachly") and Kerim Eravci ("Eravci") (both Peachly and Eravci collectively the "Defendants") and to stay briefing of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (D.E. 10) (hereinafter the "Dismissal Motion") pending jurisdictional discovery, and in support provide as follows:

### I.  INTRODUCTION AND BACKGROUND

On February 16, 2021, Plaintiffs filed the instant action against Defendants Peachly and Eravci for federal unfair competition under 15 U.S.C. §1125(a), federal cybersquatting under 15 U.S.C. §1125(d), and common law unfair competition under Florida law. On March 26, 2021, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction claiming that "Defendants have no contacts with Florida whatsoever, minimal or otherwise." *See* D.E. 1, pg. 1. In support of

this motion, Defendants have provided the lawyerly drafted declaration of Defendant Eravci, the

sole manager and member of Defendant Peachly, in which he declares in largely conclusory terms

that Peachly conducts no business in Florida, has derived no income from Florida residents, and

has not targeted Florida residents with any marketing. D.E. 10-1, ¶ 21, 23-24.

> Plaintiffs' Complaint pleads a *prima facie* case of personal jurisdiction providing that:

> Venue is proper, *inter alia*, under 28 U.S.C. §1391(b)(2) because, on information
> and belief, a substantial part of the events or omissions giving rise to Plaintiffs'
> three causes of action plead herein occurred in this judicial district. Such events
> include Defendants' advertising, marketing and promotion of their Peachly Website
> and Join Peachly Website within this judicial district. More specifically,
> Defendants' Join Peachly Website operates to attract potential content creators to
> form accounts and post photographic, video and streaming content on the Peachly
> Website, including content creators located within the Southern District of Florida.
> Likewise, Defendants have used, are using, and intend to continue to use the
> implicated **PEACHLY** Trade Name for the purpose of attracting potential third-
> party users located within this judicial district to their competing Peachly Website.
> All of the foregoing actions target individuals within this judicial district away from
> the **PEACH** Website, resulting in irreparable harm, including but not limited to
> consumer confusion in light of Plaintiffs' valuable and exclusive rights in the
> **PEACH** Mark, as well as related damages felt by Plaintiffs within the Southern
> District of Florida.

D.E. 1, ¶ 7. As shown above, Plaintiffs' basis for personal jurisdiction also addresses how

Defendants have used not only the Join Peachly Website (located at www.JoinPeachly.com) but

also other on-line recruiting sites for the purpose of "attracting potential third-party users located

within this judicial district to their competing Peachly Website." *See id*. This not only includes

Defendants' implicated site at  www.Peachly.com (the "Peachly Website"), but also the Join

Peachly Website, and the newly discovered www.TryPeachly.com (the "Try Peachly Website")

(collectively the Join Peachly Website and the Try Peachly Website are collectively herein referred

to as the "Peachly Solicitation Websites").

Without providing any supporting evidence to the contrary, Defendants' Dismissal Motion, nakedly attacks Plaintiffs' jurisdictional allegations (at D.E. 1, ¶ 7) stating that they "are simply false" without actually addressing the role of Defendants' Peachly Solicitation Websites to recruit Florida content creators. D.E. 10, pg. 3. Instead, Defendants merely cite generally to Eravci's lawyerly drafted sworn representation, providing that:

> Defendants have not advertised, marketed, or promoted their platform within this District; Defendants' platform does not 'operate to attract potential content creators' within this District and Defendants have not used the PEACHLY mark to attract potential users located in this District.

*See* D.E. 10, pg. 3.

Notably, however, in Eravci's declaration he admits that "Peachly operates a website at <peachly.com>, an online platform on which artists, entertainers, and influencers can create, host, and market original content as well as engage and interact directly with consumers." D.E. 10-1, ¶ 5. Eravci further admits how Peachly acquired the Join Peachly website for use as a "a separate marketing platform for the Peachly site." *Id*. at ¶ 12. Tellingly, while the Eravci Declaration makes unsupported statements that Peachly.com "has not targeted Florida residents with any marketing," the declaration avoids addressing whether either of the Peachly Solicitation Websites, including the Join Peachly Website, have ever solicited anyone from Florida (and/or whether any banner advertising, pay-per-click and/or any related online marketing has yielded interest from Florida content creators). Defendants have likewise failed to address any underlying Google Analytics, or similar website metrics, as to the number of Floridians who have viewed, looked at, or accessed any of the Peachly Solicitation Websites. Likewise, there are no statistics as to the number of individuals from Florida who have solicited to become content creators (performers) for

Defendants' Peachly Website including but not limited to through the Peachly Solicitation Websites.

Moreover, Defendants' sole declaration relied upon in support of the Dismissal Motion is completely silent as to whether any on-line advertising, banner advertising, advertising via third-party websites, and/or pay per click advertising has resulted in inquiries from Florida. Thus, Defendants' Dismissal Motion (and its supporting Eravci Declaration) fail to address Plaintiffs' jurisdictional basis as pled (at D.E. 1, ¶ 7) – which is rooted in how the Join Peachly Website has attracted content creators located in Florida and/or this Judicial District.

Further, Eravci represents under penalty of perjury that:

As of March 26, 2021, Peachly.com is still in the beta testing phase, and has not yet accepted any actual clients other than beta testers. At this point, the entries into the user account have been from developers, beta testers and usually consist of random characters inputted by the developers and beta testers and not actual user data. The database gets filled up with random, meaningless data. So it gets deleted before the product goes into actual launch. Therefore, we do not yet have a customer database.

D.E. 10-1, ¶ 26. This sworn representation, however, is factually inconsistent with publicly accessible information found on Defendants' Peachly Website and the Peachly Solicitation Websites. Specifically, the Eravci Declaration purports that Peachly "has not accepted any actual clients", however, a video  found on

 the Peachly Solicitation Websites (found at https://trypeachly.com) claims that "Peachly has thousands of creators and counting":





In short, the video represents that Defendants have thousands of content creators (i.e., performers) for the Peachly Website – which directly contradicts the Eravci Declaration D.E. 10-1 at ¶ 26.

Unsurprisingly, Eravci, in his declaration, fails to address Peachly's public statements provided in the video and instead tries to word-smith around the issue by stating that "Peachly.com is still in the beta testing phase, and has not yet accepted any actual clients other than beta testers." *See* D.E. 10-1, ¶ 26. This statement, if true, can be misleading at best given that Eravci does not make clear who constitutes a "beta-tester" nor whether beta-testers are monetizing their content using the platform.

Further, the publicly-facing reviews of Peachly's influencers claimed to be "[u]sing Peachly", note that content creators are already monetizing their content on Peachly, despite Eravci's testimony that "[t]he website is still in its beta testing phase and has earned no revenue to date." *See* D.E. 10-1, ¶ 6. For instance, on Peachly's Solicitation Websites, Peachly content creator, Corrie Yee, left a review stating that "Peachly allowed [her] to increase [her] income and follower count":



Similarly, as shown above, yet another Peachly content creator, Linda Marie, claims that she "can now charge what [she] wants for [her] content." Further, Peachly content creator, Alexa Ortiz, states how "Peachly gave [her] the freedom to create better content and charge more for it," while Peachly content creator, Georgia Marshal, represents how she has "been able to make more money with [her] audience":



Similar contradictory statements are found on Defendant Peachly's Twitter account where Defendants have noted how a fifth content creator named Adrianne George has been using the Peachly Website "to increase [her] income":



Likewise, another content creator named Sarah Maillard notes in the January 14th Twitter post shown below that Peachly.com allows her to "make more money with [her] audience":



In short, on no less than six instances, Peachly's content creators / social media influencers have publicly represented that they employ the Peachly Website, which has resulted in creating not only revenue, but increased revenue – which is at odds with the Eravci's  sworn representation that the Peachly Website "has earned no revenue to date." *See* D.E. 10-1, ¶ 6

Further, Defendants also provide educational resources for Peachly content creators including various on-line courses, training videos, and/or related material (herein the "My Peachly School") including: (a) the Peachly Beginner Course, (b) the Peachly Intermediate Course, and (c) the Peachly Advanced Course available at https://peachly.teachable.com/courses/ as shown below:



Notably, Defendants charge users of the My Peachly School $17.84 per month for access to the "Peachly Intermediate Course" offered at https://peachly.teachable.com/p/intermediate which claims to provide "tips, secrets and growth hacks from seasoned content creators earning over $70K/month!" including how Peachly's "Top influencer Corrie Lea teaches how she makes over $70K/month" as shown below:



Similarly, Defendants charge users of the My Peachly School $34.23 per month (or $273.84 for the Yearly Package) for access to the "Peachly Advanced Course" offered at https://peachly.teachable.com/p/advanced which claims to provide how "Corrie Yee breaks down the bottom line on how to get to the Money!" including "tips, secrets, and growth hacks from top influencers with over 1M+ followers!" as shown below:



When registering for access to these paid courses (the Peachly Intermediate Course or the Peachly Advanced Course) on the My Peachly School, users must also provide their street address, city, state, and zip code, as provided for in the following fields at https://sso.teachable.com/secure/859662/current_user/address, as shown below:



Therefore, Defendants should have (and should be easily able to produce during jurisdictional discovery) electronically-stored information relating to the geographic location of said content creator who have subscribed to the My Peachly School.

Further, apart from those seeking to take the two foregoing courses offered on the My Peachly School, prospective content creators on Peachly, LLC are required to scan their driver's license and/or passport information to obtain accounts on the Peachly APP and/or www.Peachly.com and therefore also provide their addresses to Defendants:



Given that Peachly is solely an online platform – that scanned data is then populated to provide to Defendants each content creator's name and address – such that Defendants can quickly and efficiently collect data concerning the location of its content creators. In short, Peachly's system collects geography-specific information as to each content creator which is readily available for Defendants to search and analyze to determine where content creators live. Tellingly, Defendants' Dismissal Motion (and supporting declaration) fails to address to the overall number

(and related percentage) of their content creators hailing from Florida which may be gleaned from that data.

On April 2, 2021, after having an opportunity to review Defendants' Dismissal Motion and its supporting Eravci declaration, Plaintiffs prepared and circulated to opposing counsel a memorandum detailing the discrepancies in the Eravci declaration in light of the foregoing publicly available information. *See* **Exhibit A**. Plaintiffs requested that Defendants agree to limited jurisdictional discovery, allowing Plaintiffs to prepare an informed response to Defendants' Dismissal Motion, and provided applicable case law in support thereof. Plaintiffs specified that they would seek the following type of jurisdictional discovery (*See* **Exhibit A**, pg. 10):

- A set of focused requests for production of documents limited solely to jurisdictional issues, including issues regarding Defendants' on-line advertising and marketing efforts (including banner ads, pay-per- click, etc.), as well as Google Analytics and related statistics as to viewership of the Peachly Solicitation Websites. These requests would also include any data obtained from inquiries from the Peachly Solicitation Websites and/or Peachly.com that includes geographic identifiers (ie, State and/or zip code information) when content creators form a Peachly accounts (including based on payment particulars that provide state and/or zip codes), as noted below:



- A set of interrogatories focused on the foregoing jurisdictional issues, including related metrics and/or statistics associated with Peachly account holders and/or applicants.
- A Rule 30(b)(6) deposition of Peachly LLC (to last five hours), and a deposition of Mr. Eravci (to last three hours) to take place in Phoenix.

Plaintiffs also proposed that responses to both jurisdictional discovery requests would be due within 15 days of service (including document production) and that depositions would take place 10 days later in Phoenix. *Id*. at pg. 11. Plaintiffs also informed Defendants that they would ask the Court for 30 days from such depositions to file our response in opposition to be able to obtain transcripts and prepare a response. *Id*.

Four days later, Plaintiffs sent a follow-up conferral email and provided copies of the seven interrogatories (**Exhibit B**), and fifteen requests for production (**Exhibit C**) that Plaintiffs would serve for jurisdictional discovery. *Id*. at pg. 4-6. In response, Defendants' counsel asked that Plaintiffs send "up to five focused interrogatories and requests for production limited solely to jurisdictional issues" and expressed that Defendants were "willing to consider whether [they] will agree to respond to those [requests] without the need for [Plaintiff] to file a motion." *See* **Exhibit C**, pg. 4. Defendants further added that they were "not, however, willing to agree to a deposition." *Id*. After several exchanges, Defendants abruptly ended conferral discussions stating that Defendants "do not consent to jurisdictional discovery" nor do they consent to "staying [Plaintiffs'] response to the motion for purposes of conducting discovery." *Id*. at pg. 1.

Moreover, Defendants have been unresponsive to Plaintiffs' efforts to prepare and finalize a joint motion for entry of a protective order to govern the exchange of confidential information. On March 25, 2021, Plaintiffs first circulated a draft of a proposed protective order for review by Defendants. *See* **Exhibit D**. On April 6, 2021, 12 days later, having not received any response from Defendants, Plaintiffs sent a follow-up email requesting that Defendants "advise as to the status of any edits / revisions in light of the likely need for jurisdictional discovery." *Id*. As of the filing of this motion, Defendant have not yet responded to Plaintiffs conferral efforts regarding the proposed protective order – attached hereto as **Exhibit E**.

## II.    LEGAL AUTHORITY

To withstand a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over the non-resident defendant's person. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The district court "must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *H.E.R.O., Inc. v. Self*, 24 Fla. L. Weekly Fed. D250 (U.S. S.D. Fla. May 17, 2012) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Where the evidence conflicts, however, the district court must construe all reasonable inferences in favor of the plaintiff. *See PVC Windoors, Inc. v. Babbitbay Beach Constr.*, N.V., 598 F.3d 802, 810 (11th Cir. 2010). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." *Id.*

Longstanding precedent in the Eleventh Circuit indicates that "jurisdictional discovery is highly favored before resolving Federal Rule of Civil Procedure 12(b)(2) motions to dismiss for want of personal jurisdiction." *See United Healthcare of Fla., Inc. v. Am. Renal Assocs. Holdings*, No. 16-81180-CIV-MARRA/MATTHEWMAN, 2016 U.S. Dist. LEXIS 188785, at *4-5 (S.D. Fla. Dec. 2, 2016) (citing *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 731 (11th Cir. 1982); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (a motion to dismiss for lack of personal jurisdiction may require limited discovery so that a meaningful ruling can be made); *Majd-Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)

("[a]lthough the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction"); *Blanco v. Carigulf Lines*, 632 F.2d 656, 657 (5th Cir. 1980) (dismissal was in error where defendants had not responded to plaintiff's interrogatories); *Skidmore v. Syntex Laboratories, Inc.*, 529 F.2d 1244, 1248-49 (5th Cir. 1976) (held "that the district court acted too drastically in entering its order of dismissal without giving plaintiff a further opportunity for discovery" though defendants had answered 184 interrogatories); *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir.1973) (en banc) (denial of jurisdictional discovery reversed though the plaintiff had agreed in writing that discovery would not take place until after the district court had ruled on defendants' motion to dismiss)).

Further, "Federal courts have the  power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Eaton*, 692 F.2d at 729 citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). "Where issues arise as to jurisdiction or venue, discovery is available to ascertain facts bearing on such issues." *Oppenheimer Fund*, 437 U.S. at 351 n.13.

Particularly, the Eleventh Circuit has held that"[i]f the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation, . . . then discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue." *Eaton*, 692 F.2d at 730 n.7.

Moreover, in *United Healthcare of Fla., Inc. v. Am. Renal Assocs. Holdings* cited above, the court found that jurisdictional discovery was appropriate remarking that "Plaintiffs do not have personal knowledge of the inner workings of Defendants' business organizations" and that "Plaintiffs may be able to establish an agency relationship that would have a bearing on personal

jurisdiction." *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings*, No. 16-81180-CIV-MARRA/MATTHEWMAN, 2016 U.S. Dist. LEXIS 188785, at *5-6 (S.D. Fla. Dec. 2, 2016).

Similar to the instant action, in *Elardi v. I.S. Makinen*, the court granted plaintiff's request for jurisdictional discovery where plaintiff filed his motion for jurisdictional discovery within two weeks of the filing of the motion to dismiss for lack of personal jurisdiction, noting that "[w]hen coupling these considerations with the preference that cases be decided on their merits, the balance of interests weighs in Plaintiff's favor to determine whether personal jurisdiction exists." *Elardi v. I.S. Makinen Oy*, No. 19-22229-Civ-WILLIAMS/TORRES, 2019 U.S. Dist. LEXIS 197554, at *7 (S.D. Fla. Nov. 14, 2019).

## III.   ARGUMENT

In order for Plaintiffs to prepare an informed response to Defendants' Dismissal Motion, Plaintiffs should be given the opportunity to seek jurisdictional discovery to be able to assess the veracity of Eravci's sworn declaration. This is particularly true in light of the serious discrepancies between the unsupported declaration of Eravci and the publicly facing information outlined-above found on the Peachly Solicitation Websites and Peachly's Twitter account.

Based upon the video and the statements of Peachly content creators promoted on the Peachly Solicitation Websites, inapposite to the Eravci declaration, it appears that thousands of Peachly users have been monetizing their content on the Peachly platform, which would in turn suggest that Peachly has viewers who have subscribed to or otherwise paid for access to the content of these Peachly content creators. However, Eravci has failed to address these content creators and/or viewers – much less has he provided any evidence or testimony concerning the location or residency of these content creators and/or viewers. Eravci instead resorts to providing conclusory unsupported statements, such as, claims that "Peachly does not conduct any business in the State

16

of Florida and has entered no contracts in or to be performed in the State." D.E. 10-1, ¶ 21.

Jurisdictional discovery is therefore needed to assess the extent of Defendants' contacts with

Florida. Should Peachly content creators be located in Florida, this may dispel Eravci's testimony,

as the Court may find that content creators located in Florida have contracted with Peachly and

thus Peachly conducts business in Florida sufficient to establish personal jurisdiction under

Florida's long arm statute. Moreover, should Peachly's viewership consist of Florida residents, the

Court may find that, conversely to Eravci's testimony, Peachly does derive income from Florida

residents and/or that Peachly does target Florida residents with its marketing. *See* D.E. 10-1, ¶ 23-

24. As such, jurisdictional discovery is needed to uncover information regarding Google Analytics,

or similar data, as to the number of Floridians who have viewed, looked at, or accessed any of the

Peachly Solicitation Websites which Defendants have failed to provide thus far.

Moreover, as detailed above, Peachly apparently maintains  electronic records of the

location of their prospective content creators and viewership. For instance, when registering for

access to paid courses on the My Peachly School, users must provide their street address, city,

state, and zip code. Additionally, Peachly requires that prospective content creators scan their

driver's license and/or passport to obtain accounts on the Peachly App and/or the Peachly Website

and therefore provide their addresses to Defendants. Thus, Defendants should have records relating

to the geographic location of these users which they have failed to produce absent court-ordered

jurisdictional discovery.

Since Peachly is an online platform, whose data is digitally stored, Defendants should be

able to quickly and efficiently collect data concerning the location of its viewership, content

creators, and above-mentioned My Peachly School participants without undue burden. Despite

this, Defendants, during the conferral process regarding jurisdictional discovery, refused to

provide any such electronic information and the Eravci declaration fails to provide any related information. Such information is critical in assessing the veracity of Eravci's declaration and establishing whether Defendants have sufficient contacts with Florida for the Court to be able to exert personal jurisdiction over Defendants. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 2924 20-MD-2924, 2020 U.S. Dist. LEXIS 203052, at \*23 (S.D. Fla. Oct. 30, 2020) (granting plaintiffs' request for jurisdictional discovery which plaintiffs argued is "necessary to enable them to rebut Moving Defendants' declarations." )

Since there are genuine factual disputes as to the veracity of Eravci's declaration and there exists a genuine dispute as to whether the Court can exert personal jurisdiction over Defendants, jurisdictional discovery is essential to the revelation of facts necessary to decide the issue. *See Eaton*, 692 F.2d at 730 n.7. As such, jurisdictional discovery should be made available to Plaintiffs in order to ascertain facts bearing on these issues. *See Oppenheimer Fund*, 437 U.S. at 351 n.13. Plaintiffs should not be forced to answer Defendants' Motion to Dismiss for Lack of Personal Jurisdiction blindly and without the ability to question Eravci regarding his unsupported testimony.

As such Plaintiffs request that the Court allow Plaintiffs to conduct limited jurisdictional discovery, consisting of seven interrogatories (**Exhibit B**), fifteen requests for production (**Exhibit C**), a Rule 30(b)(6) deposition of Peachly LLC (to last up to five hours) (Rule 30(b)(6) deposition topics attached as **Exhibit F**), and a deposition of Mr. Eravci (to last up to three hours) (both depositions to be taken in Phoenix). As shown in **Exhibits B, C, and F**, Plaintiffs' interrogatories, requests for production, and 30(b)(6) deposition topics are focused on jurisdictional issues, namely Defendants' activities in/relating to Florida, Defendants' on-line advertising and marketing efforts (including banner ads, pay-per- click, etc.), Google Analytics and related statistics as to viewership of the Peachly Solicitation Websites, the geographic locations of and related metrics and/or

statistics associated with Peachly content creators, and individuals enrolled for the My Peachly School's Intermediate and Advanced Courses.

Further, Plaintiffs propose that responses to both requests for production and interrogatories be due within 15 days of an order of the Court allowing jurisdictional discovery (including document production) and that depositions would take place 10 days later in Phoenix. Plaintiffs also propose that the Court stay briefing of Defendants' Dismissal Motion such that Plaintiffs' response would be due 30 days after the depositions to afford Plaintiffs time to obtain transcripts and prepare a response. *Id*.

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Motion for Leave to Conduct Jurisdictional Discovery and to stay briefing of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pending jurisdictional discovery be granted.

Dated: April 7, 2021

/s/ *Robert H. Thornburg*
Robert Thornburg
Florida Bar No. 630829
E-Mail: rthornburg@allendyer.com
Stephanie Vazquez
Florida Bar No. 1011124
E-Mail: svazquez@allendyer.com
Melissa Dangond
Florida Bar No. 1025285
E-Mail: mdangond@allendyer.com
ALLEN, DYER, DOPPELT
& GILCHRIST, P.A.
1221 Brickell Ave., Suite 2400
Miami, Florida 33131
Telephone: (305) 374-8303
Facsimile: (305) 374-8306

*Counsel for Plaintiffs Peach.com LLC and*
*Levinson Management Group LLC*

## LOCAL RULE 7.1 CERTIFICATE

Plaintiffs' counsel conferred with Defendants' counsel in good faith, and Defendants oppose the relief requested.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 7, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Robert H. Thornburg*
Robert Thornburg